**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AMERISURE INSURANCE COMPANY,**

**Plaintiff,**

**CASE NO.:**

**v.**

**ACOUSTI ENGINEERING COMPANY OF FLORIDA, a Florida For-Profit Corporation, CORE CONSTRUCTION SERVICES SOUTHEAST, INC., d/b/a CORE CONSTRUCTION, a Florida Corporation; ARTISAN PARK CLUB CONDOMINIUM ASSOCIATION, a Florida Non-Profit Corporation; THE ST. JOE COMPANY, A Florida Corporation; and ARTISAN PARK LLC, a Delaware Limited Liability Company,**

**Defendants,**

______________________________________________/

**COMPLAINT FOR DECLARATORY RELIEF**

**PLAINTIFF, AMERISURE INSURANCE COMPANY** ("Amerisure"), by and through undersigned counsel and pursuant to 28 U.S.C. §2201, *et seq.*, and Rule 57, FED.R.CIV.P., hereby files its Complaint for Declaratory Relief against Defendants Acousti Engineering Company of Florida; CORE Construction Services Southeast, Inc., Artisan Park Club Condominium Association, The St. Joe Company, and Artisan Park, LLC, and states as follows in support thereof:

1. This is an action for declaratory relief pursuant to 28 U.S.C. §2201, *et seq.*, which seeks a determination of the respective rights and obligations of Plaintiff, Amerisure, and Defendants, Acousti Engineering Company of Florida ("Acousti"), Core Construction Services Southeast, Inc., d/b/a Core Construction ("Core"), Artisan Park Club Condominium Association ("APCCA"), The St. Joe Company ("St. Joe") and Artisan Park, LLC ("Artisan Park") under a

Commercial General Liability Policy, Policy Number GL 2048301000000 (the "Policy") issued to Acousti with a policy period from October 1, 2007 to January 1, 2009. A true and correct copy of the Policy is attached hereto as Exhibit "A".

2. Amerisure is a foreign corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, MI.

3. Upon information and belief, Acousti is a for-profit corporation with its principal place of business in Orlando, Orange County, Florida licensed to do and doing business in the State of Florida in the field of construction.

4. Upon information and belief, CORE is a for-profit corporation with its principle place of business in Naples, Collier County, Florida licensed to do and doing business in the State of Florida in the field of construction.

5. Upon information and belief, APCCA is a non-profit Florida condominium corporation and has an office for the transaction of its usual and customary business in Osceola County, Florida.

6. Upon information and belief, St. Joe is a Florida corporation having its principal place of business in Jacksonville, Duval County, Florida.

7. Upon information and belief, Artisan Park is a Delaware limited liability company having its principal place of business in Jacksonville, Duval County, Florida.

8. Amerisure is incorporated in the State of Michigan with its principal place of business in Farmington Hills, Michigan and all of the Defendant are citizens of Florida or states other than Michigan. Thus this action is between parties from different states and complete diversity exists. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

9. The Policy at issue has liability limits of two million dollars ($2,000,000.00). "[T]he amount in controversy is the value of that which is sought to have declared free from doubt-the policy" when an insurer brings a declaratory action to determine an issue of coverage. *C.E. Carnes & Co., Inc v. Employers' Liability Assurance Corp.*, 101 F.2d 739, 741 (5th Cir. 1939); *see also Guardian Life Ins. Co. of America v. Muniz*, 101 F.3d 93 (11th Cir. 1996). As the value of the Policy is two million dollars ($2,000,000.00), the amount in controversy well exceeds the seventy-five thousand dollar ($75,000.00) limit for diversity jurisdiction.

10. Based on the foregoing, jurisdiction for this action is properly based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

11. Venue is appropriate in this Court as the condominium project underlying the instant declaratory judgment action is located in Osceola County, Florida.

12. CORE was the general contractor for construction of the Artisan Park Club Condominiums located in Celebration, Oceola County, Florida (the "Project").

13. On information and belief, St. Joe and/or Artisan Park were the developers of the Project and contracted with CORE to act as the general contractor for construction of the Project.

14. On information and belief, between January 18, 2005 and January of 2007, CORE and Acousti entered into a series of subcontracts and amendments regarding the Project wherein Acousti was to furnish all labor, material, and equipment necessary to install the waterproofing membrane, flashing, T-Bar, lightweight concrete and all related items as per the plans and specifications on all elevated balconies, breeze ways, and roof pads for the construction of the Project.

15. On information and belief, between January of 2006 and continuing through September of 2007, CORE notified Acousti of the leaks, water intrusion, and other problems

allegedly associated with Acousti's work, including the waterproofing membrane, flashing, T-Bar, lightweight concrete at elevated balconies, breeze ways, and roof pads.

13. On information and belief, Acousti's work was completed in 2005, Certificates of Occupancy were issued for the various buildings beginning in August of 2005, with the final Certificate of Occupancy issued in January of 2007.

14. On information and belief, control of the condominium association was transferred from St. Joe and/or Artisan Park to the condominium unit owners after issuance of the final Certificate of Occupancy in January of 2007.

15. On or about October 13, 2009, subsequent to the transfer of control of the condominium association to the individual unit owners from the developer(s), APCCA filed suit against The St. Joe Company, Artisan Park LLC, and CORE Construction Services, Southeast in the Circuit Court of the Ninth Judicial Circuit of Osceola County, Florida, Case Number 09 CA 108040C ("Underlying Action"). See Copy of Complaint in Underlying Action attached hereto as Exhibit "B".

16. In the Underlying Action, APCCA alleged that they have suffered and continue to suffer damages proximately caused by defects and deficiencies in the design and construction of the Project, including, but not limited to, architectural defects; structural defects; fire-safety defects; waterproofing defects; defects in civil drainage and landscaping defects; defects in the foundation systems, framing systems, plumbing and HVAC systems, roofing systems, and cladding systems; defects in windows and exterior doors, masonry rebar and grout structural components, exterior concrete flatwork, decks, walkways, flooring systems, drywall assemblies and truss systems; and the material and workmanship incident to their installation. (*See Exhibit "B"* at ¶ 28.)

17. On or about October 21, 2009, CORE demanded defense and indemnification from

Amerisure in the Underlying Action contending that CORE was an additional insured under the Policy issued to Acousti as the named insured.

18. On or about November 4, 2009, Amerisure issued a Reservation of Rights Regarding Possible Lack of Coverage letter ("ROR") to CORE in which Amerisure informed CORE that there were questions regarding whether Acousti's insurance policy(s) would provide coverage for CORE regarding the Underlying Action and that Amerisure would participate in the defense of CORE in the Underlying Action under a full reservation of rights.

19. The Insuring Agreement of **SECTION I – COVERAGES–COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** provides, in pertinent part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> * * *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period, and
>
> (3) Prior to the policy period, no insured listed

under Paragraph 1 Section II - Who is an Insured and no employee authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1 of Section II - Who is an Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim.

(1) Reports all, or any part of the "bodily injury" or "property damage" to us or any other insurer.

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

20. The Policy defines an "occurrence" as:

An accident, including continuous or repeated exposure to substantially the same general harmful conditions.

21. "Property damage" is defined in relevant part as:

a. Physical injury to tangible property, including all

resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the " occurrence" that caused it.

22. Paragraph 1 of **SECTION II–WHO IS AN INSURED** provides, in pertinent part, as follows:

1. If you are designated in the Declarations as:

* * *

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

23. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS provides, in pertinent part, as follows:

* * *

6. Representations

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

* * *

24. The Policy does not provide insurance coverage for "property damage" where the insured or an "employee" of the insured designated to give or to receive notice knew of the "property damage", in whole or in part, prior to the inception date of the Policy, October 1, 2007.

25. Amerisure contends that no coverage is afforded by the Policy in connection with the Underlying Action as to any of the Defendants as, on information and belief, both CORE and Acousti knew of the alleged property damage purportedly arising out of the work performed by Acousti prior to October 1, 2007.

26. A dispute has arisen between Amerisure and one or more of the Defendants regarding whether the Policy provides coverage for any claims in the Underlying Action allegedly arising out of Acousti's work, including, but not limited to whether Amerisure is obligated to defend and/or indemnify Acousti, or others, for such claims. Based upon CORE's and Acousti's knowledge of the "property damage" allegedly arising out of defective workmanship of Acousti, Amerisure contends that none of the Defendants are entitled to defense or indemnity under the Policy.

27. Amerisure maintains that there is no coverage under the Policy for the claims being made in the Underlying Action and is in doubt as to its rights, duties and obligations under the Policy.

28. Amerisure is in need of an immediate declaration of its rights, duties and obligations under the Policy as it relates to the Defendants in connection with the allegations of the Underlying Complaint.

29. All conditions precedent to the bringing of this action have been met or have been waived.

**WHEREFORE**, Plaintiff, Amerisure Insurance Company, respectfully requests that:

A. This Court take jurisdiction of the cause;

B. This Court order, adjudge and decree that this is a proper cause for an action for declaratory judgment and that there is a *bona fide* controversy between the parties as to their legal rights, duties, status and liability;

C. This Court order, adjudged and decree that CORE and/or Acousti knew of the "property damage" alleged in the Underlying Action prior to the inception of the Policy, October 1, 2007.

D. This Court order, adjudge and decree that no coverage is afforded under the subject Policy for any of the Defendants herein for the claims made in the Underlying Action;

E. This Court order, adjudge and decree that Plaintiff, Amerisure Insurance Company, has no obligation to provide defense or indemnity for any of the Defendant(s) for any of Defendants herein for claims made in the Underlying Action; and;

F. This Court grant such other and further relief to which Plaintiff, Amerisure Insurance Company, may be entitled, including, but not limited to, an award of taxable costs.

DATED THIS 28th DAY OF MAY, 2010.

**MICHAEL T. BILL, ESQ.**
Young, Bill, Fugett & Roumbos P.A.
Florida Bar No.: 997722
Post Office Drawer 1070
Pensacola, Florida 32595-1070
Telephone---(850) 432-2222
Facsimile—(850) 432-1444
mbill@flalawyer.net
***Counsel for Amerisure Insurance Company***